UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STACY A. FOULKE,

                       Plaintiff,

       -against-                                      <u>MEMORANDUM AND ORDER</u>
                                                          10-CV-4061 (SJF)(ETB)
JOHN E. POTTER, Postmaster General
United States Postal Service Agency,

                      Defendant.
------------------------------------------------------------X
FEUERSTEIN, District Judge:

I.    Introduction

On September 3, 2010, *pro se* plaintiff Stacey A. Foulke ("plaintiff") filed a complaint in this Court pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, against defendant John E. Potter, Postmaster General United States Postal Service Agency ("defendant"), accompanied by applications to proceed *in forma pauperis* and for the appointment of *pro bono* counsel. Based upon a review of plaintiff's declaration in support of her application to proceed *in forma pauperis*, plaintiff's financial status qualifies her to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Accordingly, plaintiff's application to proceed *in forma pauperis* is granted. However, for the reasons set forth below, plaintiff's application for the appointment of counsel is denied without prejudice and he complaint is *sua sponte* dismissed.

1

II. Appointment of Counsel

28 U.S.C. § 1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford counsel." Courts possess substantial discretion to determine whether appointment of counsel for civil litigants is appropriate, Ferrelli v. River Manor Health Care Center, 323 F.3d 196, 203 (2d Cir. 2003), "subject to the requirement that it be 'guided by sound legal principle.'" Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 171-72 (2d Cir. 1989) (quoting Jenkins v. Chemical Bank, 721 F.2d 876, 879 (2d Cir. 1983)).

When deciding whether to assign counsel to an indigent civil litigant under § 1915(e)(1), the threshold inquiry is whether there is some likelihood of merit to the litigant's position. Johnston v. Maha, 606 F.3d 39, 41 (2d Cir. 2010); Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001); see also Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986) (stating that "the district judge should first determine whether that indigent's position seems likely to be of substance"). "[C]ounsel should not be appointed in a case where the merits of the indigent's claim are thin and his chance of prevailing are therefore poor." Carmona, 243 F.3d at 632.

If the Court finds that there is some likelihood of merit to the litigant's position, it should next consider the following factors:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Hodge, 802 F.2d at 61-62; see also Johnston, 606 F.3d at 42 (applying the Hodge factors); Carmona, 243 F.3d at 632 (stating that "[o]nly after an initial finding that a claim is likely one of substance, will we consider secondary factors such as the factual and legal complexity of the case,

2

the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute"). However, these factors are not exclusive and "[e]ach case must be decided on its own facts." Hodge, 802 F.2d at 61.

Plaintiff alleges that defendant discriminated against her based upon her race (African American), color (black), gender/sex (female) and disability (mental stress, anxiety and post traumatic stress disorder).[1] (Compl., ¶ 7). The discriminatory conduct of which plaintiff complains arises from the alleged "[u]nequal terms and conditions of [her] employment" and the "sabotage [of her] disability retirement[,] manipulation and falsification of facts." (Compl. at ¶ 4). In addition, plaintiff complains of retaliation. (Id.) Specifically, in the "EEO Complaint of Discrimination in the Postal Service" ("EEO Complaint"), attached and referred to in the complaint, plaintiff alleges: (1) that following an extended sick leave from her employment with the United States Postal Service ("USPS"), she applied for disability retirement; (2) that in connection with her application, Patricia J. Linken ("Linken"), her last supervisor at the USPS, was required to submit documentation to the Office of Personnel Management (OPM) so it could "assess [the] validity and accuracy of information submitted by [plaintiff] and [her] medical professionals;" (3) that "[a]ll information notated [sic] on document signed by Patricia J. Linken was disingenuous, deceptive in facts to portray [her] claim merit less [sic];" (4) that the

---

[1] Although plaintiff alleges discrimination based upon disability, her complaint is brought exclusively pursuant to Title VII, which does not prohibit discrimination based upon disability. (See Compl. at page 1). Accordingly, plaintiff's claims of disability discrimination are *sua sponte* dismissed without prejudice for failure to state a claim for relief. Plaintiff must serve an amended complaint to re-plead any disability discrimination claim **within thirty (30) days from the date this order is served with notice of entry upon her**, or this claim will be deemed dismissed with prejudice.

3

information submitted by Linken "caused [her] further mental anxiety and distress" and was "reminiscent of written information Patricia J. Linken submitted to Office of Workman [sic] Compensation Program which reflected negatively on [her] claim;" (5) that the statements of Linken and "other Long Island District officials caused a negative impact on a favorable decision" on her workers' compensation claim; (6) that Linken's "February 19, 2008 written statement was another attempt, if successful, to further impact all aspect [sic] of [her] life;" and (6) that she had been subjected to "[r]elentless harassment and retaliatory conduct * * * without cease since [her] original complaint * * * and [two] subsequent complaints * * *." (Compl. at ¶ 8; attached EEO Complaint).[2]

Although plaintiff does not specify in her complaint the relief she seeks in this action, in her EEO Complaint she requested an unspecified amount of monetary damages for medical and legal fees, loss of income and pain and suffering, as well as "[c]orrection in documentation submitted by Patricia J. Linken [and] [a] [w]ritten statement concerning correction in documentation." (Compl., attached EEO Complaint).

Upon review of the complaint and accompanying exhibits, I find that the appointment of counsel is not warranted at this stage of the litigation since plaintiff's claims are likely without merit. To the extent plaintiff alleges that the allegedly false statements by Linken and other officials, which she claims were motivated by discriminatory and/or retaliatory purposes,

---

[2] The following facts can be discerned from the exhibits plaintiff attached to her complaint: (1) that on or about September 21, 2001, plaintiff filed a claim with the United States Department of Labor, Office of Workers Compensation Programs ("OWCP"), alleging that she sustained a job-related illness in August 2000; (2) that on or about April 18, 2002, OWCP denied plaintiff's claim; (3) that in or around June 2007, plaintiff contacted the USPS Human Resources Shared Service Center ("HRSSC") requesting disability retirement; and (4) that OPM approved plaintiff's application for disability retirement in April 2008.

"negative[ly] impact[ed]" her claim for workers' compensation benefits under the Federal Employees Compensation Act ("FECA"), this Court is without subject matter jurisdiction over any such claim. See 5 U.S.C. § 8128(b)(2) (a determination by the Secretary of Labor to deny or allow workers' compensation benefits is "not subject to review by * * * a court by mandamus or otherwise."); e.g. Waddy v. Chao, 157 Fed. Appx. 336, 337 (2d Cir. Nov. 10, 2005) (holding that the district court lacked jurisdiction to review the complaint because the statutory language of Section 8128 evinces a clear congressional intent to bar judicial review of FECA determinations); Shaw v. U.S. Postal Service, No. 09 Civ. 6617, 2010 WL 3749233, at * 8 (S.D.N.Y. Aug. 16, 2010), report and recommendation adopted by 2010 WL 3767115 (Sept. 27, 2010) (finding that the district court lacked jurisdiction over the plaintiff's retaliation claims relating to the denial of workers' compensation benefits because the Secretary of Labor has sole discretion over the compensability of work-related injuries for federal employees); Nicastro v. Runyon, 60 F.Supp.2d 181, 186 (S.D.N.Y. 1999) (holding that the plaintiff could not get around FECA's rule precluding judicial review of administrative decisions denying claims for work-related compensation by collaterally attacking a denial of FECA benefits as retaliatory); Lockett v. Potter, 2007 WL 496361, at * 3 (N.D. Ohio Feb. 12, 2007) (dismissing the plaintiff's claim that the USPS retaliated and discriminated against him by making false statements which caused his FECA benefits to be denied on the basis that in order to prove that claim, the court would be required to review the Secretary of Labor's decision, which is prohibited by FECA. "[D]istrict court's lack jurisdiction over collateral attacks of a denial of FECA benefits.") The relief sought by plaintiff in her EEO Complaint, including compensation for loss of income, evidences that any claim relating to the denial of her claim for workers' compensation benefits is "nothing more that a 'garden variety' FECA challenge." Stone v. Chao, 284 F.Supp.2d 241, 247 (D. Mass. 2003). Accordingly, any such claim

is *sua sponte* dismissed without prejudice for lack of subject matter jurisdiction.

Moreover, to the extent plaintiff alleges that the purportedly false statements by Linken affected her application for disability retirement under the Federal Employee Retirement System ("FERS"), she fails to state a claim for relief because OPM approved her application in April 2008. Accordingly, any such claim is *sua sponte* dismissed with prejudice, since any amendment to the complaint to reassert such a claim would be futile. See generally Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

To the extent plaintiff alleges that the purportedly false statements by Linken affected OPM's determination of the benefits and annuity due her upon retirement, the complaint is *sua sponte* dismissed without prejudice pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.[3] Plaintiff must serve an amended complaint to re-plead any such claim, including "a short and plain statement of the claim showing that [she] is entitled to relief," Fed. R. Civ. P. 8(a)(2), and a demand for the relief sought with respect to this claim, see Fed. R. Civ. P. 8(a)(3), **within thirty (30) days from the date this order is served**

---

[3] In the exhibits plaintiff attached to her complaint, plaintiff asserted that employees of the USPS fraudulently altered the last day in her pay status information to render her ineligible for health and life insurance benefits and that although OPM approved her application for disability retirement, the actions of the USPS employees ensured that she would receive no benefits during her retirement. A letter from the USPS HRSSC dated May 6, 2008 indicates that plaintiff's life insurance was terminated because she held a "Leave Without Pay" ("LWOP") status for twelve (12) months. Another document indicates that plaintiff's health benefits were terminated due to the fact that she held a "non-pay status" for three hundred sixty-five (365) days. In still another document, plaintiff alleged that she lost one thousand (1000) hours of retirement pay as a result of the USPS's inaccurate documentation. However, plaintiff's allegations in the complaint and EEO Complaint do not incorporate or reference any of these contentions.

6

**with notice of entry upon her**, or this claim will be deemed dismissed with prejudice.

To the extent plaintiff seeks a "correction" in the documentation submitted to OPM by Linken, such relief is unavailable in a Title VII action. Rather, any claim seeking amendment of agency records must be commenced pursuant to the procedures set forth in the Privacy Act, 5 U.S.C. § 522a, which ensures that an individual can access his or her records and request amendment of those records to correct any perceived inaccuracies, see 5 U.S.C. § 522a(d), and provides that a civil action may be commenced in federal court, *inter alia*, to correct an inaccurate record that the agency has refused to amend, see 5 U.S.C. § 522a(g)(1)(A).[4] Accordingly, plaintiff's claims seeking amendment of the documents upon which OPM relied in rendering its disability retirement benefits determination are *sua sponte* dismissed without prejudice. Plaintiff must serve any amended complaint to re-plead a valid Privacy Act claim, including allegations that she properly exhausted her administrative remedies and that provide a basis to equitably toll the applicable statute of limitations, **within thirty (30) days from the date this order is served with notice of entry upon her**, or her claim seeking amendment of the USPS documentation submitted to OPM upon her application for disability retirement will be deemed dismissed with prejudice.

III. Conclusion

---

[4] I make no determination at this time as to the merits of such a claim except as follows: (1) that in order to state a valid claim for relief under Section 522a(g)(1)(A), plaintiff must have first exhausted her administrative remedies by requesting agency review under Section 522a(d)(3), see Lee v. Geren, 480 F.Supp.2d 198, 206 (D.D.C. 2007); and (2) that the Privacy Act imposes a two (2) year statute of limitations on claims brought pursuant to its provisions. See 5 U.S.C. § 522a(g)(5). Since the documents which plaintiff seeks to have corrected were created in 2008, and plaintiff was clearly aware of the purported inaccuracies in such documents in 2008, any claim under the Privacy Act would likely be time-barred absent a basis to equitably toll the limitations period.

7

Plaintiff's application to proceed *in forma pauperis* is granted; the complaint is *sua sponte* dismissed for the reasons set forth herein; and plaintiff's application for the appointment of *pro bono* counsel is denied without prejudice. Plaintiff must file any amended complaint in accordance with this order **within thirty (30) days from the date this Order is served with notice of entry upon her**, or her complaint will be deemed dismissed with prejudice. The Clerk of the Court is directed to cause the United States Marshal Service to serve copies of the summons, complaint and this order upon defendant without prepayment of fees, and to serve notice of entry of this Order in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* plaintiff at her last known address, see Fed. R. Civ. P. 5(b)(2)(C).

SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge

Dated: January 10, 2011
Central Islip, New York